IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERRI LEIGH JACKSON<br>    Plaintiff<br><br>v.<br><br>STAR TRANSPORT, et al.,<br>    Defendants. | Case No. 3:09-0613<br>Judge Trauger/Brown |

To:  The Honorable Aleta A. Trauger

**REPORT AND RECOMMENDATION**

Presently pending before the Magistrate Judge is the Defendants' Motion for Summary Judgement. (Docket Entry 96). No response was filed by the Plaintiff. For the reasons set forth below, the Magistrate Judge **RECOMMENDS** Defendants' Motion for Summary Judgement be **GRANTED** and Plaintiff's claims be **DISMISSED.**

I. INTRODUCTION

The Plaintiff brings this action under 42 U.S.C. § 2000e-2(a), 42 U.S.C. § 12101, and 29 U.S.C. § 623(a)(1), alleging employment discrimination and retaliation. Plaintiff filed her *pro se* case in District Court for Middle District of Tennessee. (Docket Entry 1).

II. BACKGROUND

Plaintiff Jerri Jackson filed this action *pro se* in the Middle District of Tennessee on June 26, 2009. (Docket Entry 1). On August 10, 2009, the Magistrate Judge found that the Complaint

1

was not facially frivolous as to the Defendants Star Transport and directed that process be served upon the Defendants. (Docket Entry 9). On March 31, 2011, Defendants filed this motion for summary judgement. (Docket Entry 96). Plaintiff did not respond to the motion for summary judgment.

Because Plaintiff did not file a response, the Magistrate Judge adopts Defendants' statement of the facts as true. *See Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (finding that, in the absence of a response to a dispositive motion, "a court's reliance on the facts advanced by the movant is proper and sufficient."). The facts submitted by Defendants are:

> Star is a motor carrier headquartered in Nashville, Tennessee that operates 475 power units with more than 600 employees. While Star is authorized to operate throughout the United States and Canada, Star focuses its trucking operation on the eastern region of the United States. Star has regional service centers in both metropolitan and rural areas from which freight is delivered to its final destinations.
> Star is an equal opportunity employer and prohibits discrimination and harassment in any form. Star has adopted and disseminated to all its employees a fair treatment policy and has posted the policy in the employee break rooms beside the EEO posters. Star was purchased by Covenant Transport in 2006. Covenant was recently sued by Plaintiff Jackson as well.
> Plaintiff Jackson was never an employee of Star. During July of 2008, the plaintiff, Jerri Jackson, came to Star Transport headquarters in Nashville, Tennessee. Jackson had taken a training course at Volunteer Training Center, Inc. ("VTC") and had arranged through VTC to seek employment at Star. Jackson reported for an orientation class for prospective drivers on July 7-9, 2008. Bob Harrigan was the training manager. He participated in orientation and supervised all orientation leaders. During the course of the orientation class, Mr. Harrigan interviewed Jackson. He also undertook a thorough review of her application packet. Ms. Jackson's application showed that she had left three prior trucking jobs after very short periods of time, in one case after just one day. Ms. Jackson also had very little driving experience. Star makes significant investments in its employees. Ms. Jackson's spotty employment history, particularly in three prior truck driving positions, combined with her lack of experience led Star to conclude that she would not be a reliable employee and hence would not represent a wise investment for Star as an employer. For these reasons Star did not consider Jackson to be a qualified applicant.
> Prior to Mr. Harrigan's interview with Ms. Jackson, Mr. Harrigan had already determined that Ms. Jackson was not a qualified applicant because of her broken employment record. As Mr. Harrigan was explaining his concerns to Ms. Jackson, she, without prompting, began to lay numerous EEOC files on Mr.

> Harrigan's desk. The files completely covered his desk. Mr. Harrigan had never been involved with the EEOC. Accordingly, he contacted Star's Human Resource Director and asked him to come join the meeting with Ms. Jackson. Mr. Harrigan wanted to confirm that the fact that Ms. Jackson had filed numerous EEOC claims should not stand as a barrier to the decision he had already made–that Ms. Jackson was not qualified applicant and should not be hired.
>
> Ms. Jackson's alleged disabilities had nothing to do with Star's decision not to hire her. Jackson stated in her application that she was "triply" disabled; that she needed daily and nightly access to restroom facilities with "no shoulder of the road stuff," and that she needed "a patient trainer whom will work with me." During Mr. Harrigan's interview with her, Ms. Jackson mentioned her need for restroom facilities and made a comment about adult diapers. Aside from these comments, Ms. Jackson did not give any specifics about her alleged "triple disability." Ms. Jackson did not inform Mr. Harrigan of the particulars of her purported disabilities, and Star made no decisions about her application for employment based on her assertions about her disabilities on the application, or the comments she made during her interview. Star decided not to employ Ms. Jackson because her work history showed her to be an unreliable employee with limited experience and hence a poor investment for Star.
>
> Mr. Harrigan did not know anything about Ms. Jackson's religion at the time the decision was made not to hire Ms. Jackson. Religion is not a topic that Mr. Harrigan or Star addresses during orientation interviews. The decision not to employ Ms. Jackson was not made because of her purported disabilities, her age, her sex or her religion. The decision not to employ Ms. Jackson was also not made because she had already filed EEOC complaints against prior employers. After Star exercised its business judgment that Jackson was not a qualified applicant, Star arranged for Ms. Jackson to have a bus ticket to her home in Louisville, Kentucky, and provided her transportation to the bus terminal.
>
> During her deposition, Ms. Jackson expressed her belief that the circling of the letters "STU" on the Driver Qualification Audit Form indicated that she had been hired by Star. This simply is not the case. The Driver Qualification Audit Form is an internal document used by Star. The letters "STU" are an abbreviation for "Student", which means the applicant–like Jackson–is a student driver that has just come out of trucking school and has little or no experience.

(Docket Entry 96) (citations omitted).

Together with their motion for summary judgement and accompanying memoranda, defendants also filed the plaintiff's deposition testimony and affidavits of Star Transport's Manager Bob Harrigan. (Docket Entry 96). The Magistrate Judge has reviewed these documents, as well.

### III. LEGAL DISCUSSION

**A. Standard of Review for a Motion for Summary Judgment**

Summary judgment is appropriate if there is "no genuine issue as to any material fact" and "the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c). The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a

3

jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After sufficient time for discovery and upon motion, Fed. R. Civ. P. 56(c) mandates summary judgement against a party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must show there is "no genuine issue as to any material fact," and for this reason, the material presented must be viewed in a "light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In order to survive summary judgement, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). Thus, even if the nonmovant produces some evidence, the production will not be sufficient to defeat summary judgement so long as no reasonable jury could reach a finding on that issue in favor of the non-moving party. *Anderson*, 477 U.S. at 248. The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must. . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). If the non-moving party fails to do so, then summary judgement, if appropriate, should be granted for the moving party. *Id*.

However, "a party is never required to respond to a motion for summary judgement in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979). The movant retains the burden of establishing that "the moving party is entitled to judgement as a matter of law," even if the non-moving party fails to respond. Fed. R. Civ. P. 56(c). The trial court's duty is to "intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party."

*Guarino*, 980 F.2d at 407. In addition, "reasonable inferences must be considered if apparent from the designated evidence and favorable to the non-moving party." *Id*.

**B. Analysis**

Plaintiff alleges in her Complaint that Defendants rejected her employment due to: (1) sex and religious discrimination in violation of Title VII of the Civil Rights Act; (2) disability discrimination in violation of the ADA; (3) age discrimination in violation of the ADEA; and (4) retaliation in violation of Title VII. (Docket Entry 1, p. 3). The undersigned believes that the Plaintiff has not established a *prima facie* case of discrimination on claims 1-3 and the Plaintiff has not satisfied her burden of showing that the Defendants' reason for rejecting employment was merely pretext for a discriminatory purpose. Additionally, the Magistrate Judge does not believe, based on the facts, that the Defendants retaliated against the Plaintiff after learning of her prior EEOC charges. [1]

1. Employment Discrimination Claims Under Title VII, ADA, and ADEA

The Plaintiff's claims of discrimination under Title VII, ADA, and ADEA can be reviewed under similar analysis. The disability discrimination claims under the ADA and the age discrimination claims under the ADEA are similar to the burden-shifting framework used in Title VII discrimination claims. Title VII of the Civil Rights Act, *42 U.S.C. § 2000e-2(a)*, makes it unlawful for an employer to fail or refuse to hire any individual because of such individual's race, color, religion, sex, or national origin. In the absence of direct evidence of discrimination,

---

[1] The Plaintiff alleged in her Complaint that she was terminated from employment as well as alleged that the Defendants' failed to promote her. In the Defendants' uncontested motion, it is argued that the Plaintiff was not hired at all, but instead was seeking employment. Because the Defendants' Motion is uncontested, and the Statement of Facts is to be regarded as true, the Magistrate Judge will assume that the Plaintiff is challenging discrimination and retaliation under a "failure to employ" claim, and not under a "termination" or "failure to promote" claim.

claims under Title VII are analyzed under a burden-shifting framework. Plaintiff has the initial burden of demonstrating a prima facie case of employment discrimination by showing (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that, despite her qualifications, she was rejected; and (4) that, after she was rejected, the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 803 (1973). [2] [3]

If the Plaintiff successfully establishes a *prima facie* case of discrimination under any of the three statutes the burden shifts to the defendant employer to articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection. *Id*. If the employer proffers such a reason, the burden swings back to the plaintiff to show that the proffered reason is a pretext for illegal discrimination. *McDonnell Douglas*, 411 U.S. at 804.

Here, the Defendants argue it its motion that, based upon undisputed facts, the plaintiff cannot demonstrate a *prima facie* case of employment discrimination under either Title VII, the ADA, or the ADEA because she is unable to establish an essential element of a claim under all three statutes–that she was qualified for the position she sought. The undersigned Magistrate

---

[2] Disability discrimination claims, under the ADA, are analyzed under a similar burden shifting scheme. The Plaintiff has the initial burden of demonstrating a *prima facie* case by showing that: (1) she was "disabled" under the ADA; (2) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; (3) she suffered an adverse employment action; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) a nondisabled person replaced her. *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)).

[3] The ADEA makes it illegal for an employer to discriminate against an individual because of such individual's age. *29 U.S.C. § 623(a)(1)*. A plaintiff claiming that she was unlawfully terminated in violation of the ADEA must establish a *prima facie* case of age discrimination by showing: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a younger worker. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008). (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir.2007)).

Judge agrees with the Defendants. The Plaintiff has not provided evidence that she was in fact qualified for the position. The Plaintiff was unreliable in her previous employments, having left after very short periods of time. Additionally, she had very little driving experience. This shows that the Plaintiff was not in fact qualified for the job, and thus she fails to satisfy a key element of a discrimination claim. Therefore the Plaintiff has not satisfied a *prima facie* case of discrimination under either Title VII, the ADA, or the ADEA.

Additionally, the Plaintiff has not offered evidence regarding another common element of discrimination under Title VII, the ADA, or the ADEA–that a member outside of her protected class was replaced or hired instead of her. Based on the facts, the Plaintiff has not taken discovery from the Defendants regarding other driver applicants and their sex, religion, age, disability or qualification. The Plaintiff fails to show that other individuals outside her protected class were hired in lieu of her. Therefore, the Plaintiff further cannot satisfy the elements of a *prima facie* case of discrimination under any of the three statutes.

Lastly, the Defendants argue that if the Plaintiff succeeded in establishing a *prima facie* case, the Plaintiff still fails to show that the Defendants' reason for rejecting her employment–her poor record of work at other trucking jobs and Star's consequent unwillingness to invest in an employee whose history showed her to be unreliable–was actually a pretext for illegal discrimination. The undersigned agrees with the Defendants. Despite the Plaintiff's contention of the underlying discrimination claim, the Plaintiff has not offered any evidence to prove that the Defendants' reasons were merely pretext for discrimination. Therefore, the Plaintiff has not satisfied her burden of proof, and moreover cannot succeed on her employment discrimination claims.

2. Title VII Retaliation Discrimination Claim

Title VII of the Civil Rights Act, *42 U.S.C.§ 2000e-3(a)*, makes it an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Thus, this section prohibits an employer from retaliating against an employee who has opposed any practice by the employer made unlawful under Title VII and prohibits an employer from retaliating against an employee who has participated in any manner in an investigation under Title VII. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000). The Plaintiff claims that she was discriminated against by the Defendants in retaliation for the Plaintiff's participation in filing EEOC claims.

To establish a claim under retaliation, a Plaintiff must meet the test of a slightly modified McDonnell Douglas framework by showing: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to Defendants; (3) Defendants thereafter took an adverse employment action against Plaintiff, or Plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Id*.

If Plaintiff establishes a prima facie case under either clause, then the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for Plaintiff's discharge. *Id*. (citing *McDonnell Douglas*, 411 U.S. at 802). Plaintiff must then demonstrate that the proffered reason was not the true reason for the employment action, instead, the reason was a mere pretext for discrimination. *Id*.

Here, the Plaintiff has also failed to satisfy the requirements of a *prima facie* case of retaliation. Based on the facts, the first three elements of a *prima facie* retaliation case may be

8

satisfied merely because the Plaintiff deliberately made the manager, Mr. Harrigan, aware of the Plaintiff's prior EEOC claims. However, the facts remain clear that the Defendants did not think Plaintiff Jackson was qualified for the job, but instead had already determined that the Plaintiff would not likely be a good candidate for hire. Therefore, the last element of a *prima facie* case of retaliation is not satisfied because there is not a causal connection between the Plaintiff's prior EEOC claims and the Defendants' refusal to hire her. Thus, the undersigned believes that the Plaintiff has not satisfied the elements of a *prima facie* case, and therefore her retaliation claim should be denied.

Additionally, like in the employment discrimination claims, assuming the Plaintiff did establish a *prima facie* retaliation claim, she still failed to demonstrate that the Defendants' proffered reason was a mere pretext for discrimination. Plaintiff does not offer any evidence that the Defendants reason for not hiring her–her poor record of work at other trucking jobs and Star's consequent unwillingness to invest in an employee whose history showed her to be unreliable–was merely pretext for discrimination.

 In summary, the undersigned believes from the undisputed facts that Plaintiff Jackson failed to demonstrate that she was qualified for the job she sought. Further, Plaintiff has offered no evidence that Defendants accepted employees outside of the Plaintiff's protected class. Moreover,  the Plaintiff has failed to carry her burden of showing that Star's proffered reason for rejecting her employment–her poor record of work at other trucking jobs and lack of driving experience–was actually a pretext for illegal discrimination. Finally, there is no evidence suggesting that the Defendants rejected plaintiff in retaliation for her EEOC charges and lawsuits against other employers.

For the above reasons, the undersigned believes that there is no genuine issue of material fact for trial and that the Defendants is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** Defendants' Motion for Summary Judgement be **GRANTED** and Plaintiff's claims be **DISMISSED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this report within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this 24th day of May, 2011.

/S/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge